No. 20-4061

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
*Plaintiff/Appellant,*

v.

**BONIFACIO FERNANDEZ SANCHEZ,**
*Defendant/Appellee.*

On Appeal from the United States District Court
for the Western District of Virginia
Charlottesville (Hon. Norman K. Moon)

BRIEF OF THE APPELLEE

**JUVAL O. SCOTT**
Federal Public Defender
for the Western District of Virginia

**ERIN TRODDEN**
Assistant Federal Public Defender
116 N. Main St., Room 305
Harrisonburg, VA 22802
434-220-3396

*Counsel for Appellee*

# TABLE OF CONTENTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

STATEMENT OF JURISDICTION ...................................................................... 1

STATEMENT OF THE ISSUE ............................................................................. 2

STATEMENT OF THE CASE .............................................................................. 2

SUMMARY OF ARGUMENT .............................................................................. 8

STANDARD OF REVIEW.................................................................................... 9

ARGUMENT....................................................................................................... 10

  I.   THE DISTRICT COURT PROPERLY DETERMINED THAT
      MR. FERNANDEZ SANCHEZ'S DUE PROCESS RIGHTS WERE
      VIOLATED .................................................................................................. 10

      a.  Immigration hearings are governed by a detailed statutory and
          regulatory framework.................................................................... 10

      b.  The government contends for the first time on appeal that
          Mr. Fernandez Sanchez did not have a due process right to be
          considered for discretionary relief, and therefore plain error review
          applies to this argument............................................................... 13

      c.  The new argument that Mr. Fernandez Sanchez was not deprived
          of due process fails to satisfy plain error review ....................... 16

      d.  Even under a de novo standard of review, Mr. Fernandez Sanchez
          was denied due process in his removal proceedings................... 20

  II.  THE DISTRICT COURT PROPERLY DETERMINED THAT MR.
      FERNANDEZ SANCHEZ SUFFERED PREJUDICE................................... 33

      a.  The district judge properly found evidence that Mr. Fernandez
          Sanchez would have likely received voluntary departure and that
          therefore he was prejudiced ........................................................ 34

b.  The government's argument that Mr. Fernandez Sanchez does not meet the standard for pre-conclusion voluntary departure because he did not request it is nonsensical ............................................................. 36

c.  The government's argument that Mr. Fernandez Sanchez must show he would not be deported in the future is incorrect .................................... 37

d.  To the extent it was relevant whether Mr. Fernandez Sanchez could pay for his departure, he was also prejudiced by the IJ's failure to develop the record ...................................................................... 38

CONCLUSION ............................................................................................. 40

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Al Khouri v. Ashcroft*, 362 F.3d 461 (8th Cir. 2004)...................................................26, 39, 40

*Alfareche v. Cravener*, 203 F.3d 381 (5th Cir. 2000).............................................................. 29

*Appiah v. INS*, 202 F.3d 704 (4th Cir. 2000) ......................................................................... 17

*Ashki v. INS*, 233 F.3d 913 (6th Cir. 2000) ........................................................................... 29

*Auer v. Robbins*, 519 U.S. 452 (1997) ................................................................................... 24

*Chevron, U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984).......................................... 23

*Dada v. Mukasey*, 554 U.S. 1, 11 (2008)................................................................................. 7

*Dallas Gas Partners, L.P. v. Prospect Energy Corp.,* 733 F.3d 148 (5th Cir. 2013) .............. 14

*In re Under Seal*, 749 F.3d 276 (4th Cir. 2014)..................................................................... 14

*INS v. St. Cyr*, 533 U.S. 289 (2001)........................................................................18, 25, 27

*Jay v. Boyd*, 351 U.S. 345 (1956) .......................................................................................... 25

*Narine v. Holder*, 559 F.3d 246 (4th Cir. 2009) .................................................................... 30

*Ramirez v. Sessions*, 887 F.3d 693 (4th Cir. 2018) ................................................................ 23

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................ 11

*Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019)...................................................................... 24

*Smith v. Ashcroft*, 295 F.3d 425 (4th Cir. 2002) ............................................... 17, 18, 26, 29

*United States v. Aguirre-Tello*, 353 F.3d 1199 (10th Cir. 2004) ........................................... 29

*United States v. Bennett,* 698 F.3d 194 (4th Cir. 2012)......................................................... 14

*United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013)..................................................... 17

*United States v. Charleswell*, 456 F.3d 347 (3d Cir. 2006) .......................20, 29, 31

*United States v. Cohen,* 888 F.3d 667 (4th Cir. 2018) ......................................... 13

*United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004) ..................................... 26, 28, 29, 32

*United States v. Cortez,* 930 F.3d 350 (4th Cir. 2019) ......................................... 4

*United States v. El Shami*, 434 F.3d 659 (4th Cir. 2005) ....................................9, 10, 19, 38

*United States v. Estrada*, 876 F.3d 885 (6th Cir. 2017).................................... 29

*United States v. Gomez,* 757 F.3d 885 (9th Cir. 2014) ......................................... 31

*United States v. Heffner*, 420 F.2d 809 (4th Cir. 1969)......................................... 21

*United States v. Itehua*, No. 3:17cr119, 2018 WL 1470250 (E.D. Va. Mar. 26, 2018). 6, 18

*United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020)......................................... 16

*United States v. Lopez-Collazo*, 824 F.3d 453 (4th Cir. 2016).........................................*passim*

*United States v. Lopez-Ortiz*, 313 F.3d 225 (5th Cir. 2002).................................... 29

*United States v. Lopez-Vasquez,* 1 F.3d 751 (9th Cir. 1993)......................................... 31

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ................................................... 23

*United States v. Melendez-Castro*, 671 F.3d 950 (9th Cir. 2012).......................................... 32

*United States v. Mendoza-Lopez,* 481 U.S. 828 (1987) ...................................... 10, 18, 26, 29

*United States v. Miranda-Rivera*, 206 F. Supp. 3d 1066 (D. Md. 2016)............................ 22

*United States v. Moreno-Tapia*, 848 F.3d 162 (4th Cir. 2017) ............................................. 28

*United States v. Olano*, 507 U.S. 725 (1993) ................................................... 16, 19

*United States v. Ordoñez,* 328 F. Supp. 3d 479 (D. Md. 2018).........................................6, 18

*United States v. Palladares-Galan*, 359 F.3d 1088 (9th Cir. 2004) ....................................... 31

*United States v. Perkins*, 108 F.3d 512 (4th Cir. 1997) ................................................... 19

*United States v. Ramirez Castillo*, 748 F.3d 205 (4th Cir. 2014) .......................................... 16

*United States v. Sanchez-Lopez*, No. 2:19cr64, 2019 WL 5686914
    (E.D. Va. Nov. 1, 2019), ................................................................................. 6, 7

*United States v. Span*, 789 F.3d 320 (4th Cir. 2015) ............................................... 33

*United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004) ........................................ 28

*United States v. Wilson*, 316 F.3d 506 (4th Cir. 2003) ................................... 17, 18, 19, 29

*United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005 ........................................... 9

*United States v. Zayyad*, 741 F.3d 452 (4th Cir. 2014) ............................................ 14

*United States ex. rel. Accardi v. Shaughessy*, 347 U.S. 260 (1954) ...................................... 21

*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950) ............................. 21, 28, 30

## Other Sources

8 U.S.C. § 1181 ......................................................................................... 11

8 U.S.C. § 1182 .................................................................................... 7, 17

8 U.S.C. § 1184 ......................................................................................... 11

8 U.S.C. § 1326 ................................................................................... *passim*

8 U.S.C. § 1225 ......................................................................................... 11

8 U.S.C. § 1227 ......................................................................................... 11

8 U.S.C. § 1228 ......................................................................................... 11

8 U.S.C. § 1229 ................................................................................. 11, 12, 21, 32

8 U.S.C. § 1306 ......................................................................................... 11

8 U.S.C. § 1324 ......................................................................................... 11

8 U.S.C. § 1325 ................................................................................ 11

18 U.S.C. § 3731 .............................................................................. 1

8 C.F.R. § 1240 .......................................................................*passim*

*In re Arguelles-Campos*, 22 I. & N. Dec. 811 (BIA 1999) ............................................... 13, 39

*In re Cordova,* 22 I. & N. Dec. 966 (BIA 1999) ............................................... 23, 24

*Matter of Gonzalez-Figueroa*, 2006 WL 729784 (BIA 2006) ................................................. 35

*Matter of Mounaddif*, 2008 WL 486935 (BIA 2008) ............................................... 35

*Matter of Pineda-Castellanos*, 2005 WL 3833024 (BIA 2005) ............................................... 35

*Matter of Sanabria-Dominguez*, 2010 WL 2601495 (BIA 2010) ........................................... 35

No. 20-4061


IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT


UNITED STATES OF AMERICA,
*Plaintiff/Appellant,*

v.

BONIFACIO FERNANDEZ SANCHEZ,
*Defendant/Appellee.*


On Appeal from the United States District Court
for the Western District of Virginia
Charlottesville Division (Hon. Norman K. Moon)


BRIEF OF THE APPELLEE


## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. The government appeals from the judgment of the district court entered on December 20, 2019. J.A. 121.[1] The notice of appeal was filed in the district court on January 20, 2020. J.A. 126. Jurisdiction is based on 18 U.S.C. § 3731.

---

[1] References to the Joint Appendix are denoted "J.A. ___."

## STATEMENT OF THE ISSUE

A charge of illegal reentry under 8 U.S.C. § 1326 must be dismissed when a prejudicial due process violation renders the underlying removal order invalid. In 2011, Mr. Fernandez Sanchez, was ordered deported after a hearing with an immigration judge who failed to advise him both of his appeal rights and about relief for which he was apparently eligible. The immigration judge also failed to properly consider him for that relief.

Did the district court err in granting Mr. Fernandez Sanchez's motion to dismiss the indictment in this case under 8 U.S.C. § 1326(d), finding that his immigration hearing was fundamentally unfair because the proceedings denied him due process and he was prejudiced as a result?

## STATEMENT OF THE CASE

Mr. Fernandez Sanchez came to this country as an undocumented minor in 2006. J.A. 119. He started a family, and by the time he was arrested on DUI charges in 2011, he had two U.S. citizen children. J.A. 119, 128. He was placed in removal proceedings following his arrest and was issued a Notice to Appear charging him with removability based on his presence in the country without lawful admission. J.A. 27-28. Among the advisals in English on the reverse of the Notice to Appear was the statement, "You will be advised by the immigration judge before whom you appear of any relief from removal for which you appear eligible including the privilege of departure voluntarily.

You will be given a reasonable opportunity to make any such application to the immigration judge." J.A. 28.

Mr. Fernandez Sanchez requested an immigration hearing. J.A. 29. On June 30, 2011, he appeared in immigration court. The hearing lasted approximately four minutes. J.A. 128. The immigration judge asked him if he wanted to find an attorney or go back to Mexico. J.A. 128. Mr. Fernandez Sanchez responded that he wanted to go back to Mexico. *Id.* Later in the hearing, at approximately 3:19, Mr. Fernandez Sanchez stated in Spanish, "No quiero la deportación." ("I don't want deportation"), but the interpreter did not translate that statement. *Id.* He admitted to entering the United States illegally in 2006. *Id.* The IJ asked him if he had any money to pay for a return to Mexico, and he responded that he did not have money now to pay. *Id.* The IJ then ordered him removed, and the hearing ended. *Id.* The summary order of the immigration judge, entered the same day, June 30, 2011, indicates that Mr. Fernandez Sanchez waived his right to appeal, J.A. 30, but appeal was never discussed with him in the hearing. J.A. 128.

Mr. Fernandez Sanchez was removed on July 22, 2011. J.A. 32. He was removed twice more, in January and February 2013, by reinstatement of the June 30, 2011 order. J.A. 57-62. He was found in the United States again on August 21, 2018, and was subsequently charged with illegal reentry in violation of 8 U.S.C. § 1326. J.A. 9.

He filed a motion to dismiss the indictment under 8 U.S.C. § 1326(d), arguing, *inter alia*, that he was excused from administrative exhaustion, deprived of judicial review, and his removal hearing was fundamentally unfair.[2] J.A. 10. The government, in its response brief, argued that Mr. Fernandez Sanchez could not meet the first two requirements of section 1326(d), and that in any case Mr. Fernandez Sanchez could not show he suffered any prejudice because he was not "apparently eligible" for voluntary departure. J.A. 44-47.

The district judge held a hearing on the motion to dismiss on October 7, 2019. At the hearing, the government did not dispute that the IJ had failed to comply with all of the removal hearing requirements set forth in 8 C.F.R. § 1240.10. J.A. 91-97. Rather, the government's argument focused on prejudice. When the judge questioned counsel for the government regarding Mr. Fernandez Sanchez's argument that he was denied his appeal rights, counsel for the government responded, "There's nothing, then, to appeal from the immigration judge's decision because it was something that he admitted to and said, I just want to go back; I don't want to contest this." J.A. 94.

---

[2] Mr. Fernandez Sanchez also initially raised the same argument this Court later considered and rejected in *United States v. Cortez*, 930 F.3d 350 (4th Cir. 2019). This case was stayed pending the decision in *Cortez*, and Mr. Fernandez Sanchez recognized before the district court that *Cortez* was dispositive of that argument. Because *Cortez* addressed a question of jurisdiction, however, rather than the requirements for collateral attack under 8 U.S.C. § 1326(d), it does not affect Mr. Fernandez Sanchez's collateral attack on his removal hearing.

Similarly, the government's only argument regarding voluntary departure centered around the prejudice analysis as well. Counsel for the government argued:

> But with regard to voluntary departure, it's still a discretionary form of relief here that the immigration judge could have given. But, here, with regard to actual prejudice, there's many steps along the way. First is to show that there would be no actual prejudice. One, he would have had to have been notified of that form of relief, either his right to appeal or to get a voluntary departure. Then he would have to show that he would have appealed that decision.
>
> Then, that that decision would have been different. Here, it's still a discretionary decision for voluntary departure. And then, finally, that he would have actually, in this sense, voluntarily departed, and his situation would be different. That's important in this context because aliens don't want to have that removal so they can come here and apply lawfully so they can depart, go back to home and then come back and try to lawfully apply to be in the United States. Here, the defendant can't show that. He hasn't met that burden of actual prejudice of being in a different position because he can't show that he would have actually gotten all those steps correct, and then been able to actually voluntarily depart. In fact, that's why the immigration judge, I'm guessing, asked that question: Can you leave? And he said -- I'm paraphrasing -- we'd have to go back to the audio -- but he couldn't at that moment, and that's relevant for voluntary departure, not only in that removal proceeding, but here, which is he has to show actual prejudice, that he would have been in a different position, that he would have not have been removed and could have gone back to Mexico and he could have applied to come here lawfully. And he could not show he could have actually departed here. So based on that, he cannot show that he was actually prejudiced based on those errors that happened at the immigration hearing.

J.A. 94-96.

The government's only discussion of due process violations came where the judge inquired, "[W]hat rights of any consequence does the alien have when he goes into that hearing?" Counsel for the government responded:

Right. I think that goes back to what are the due process rights of an alien and, here, it's the opportunity to be heard. Here, he said he didn't want to be heard on that issue. So he said he didn't want to get an attorney. He was wanting to go back to Mexico. So he had the opportunity to be heard. He just didn't want to do that. So that is what was happening at that hearing. Yes, maybe the immigration judge could have gone down those things, but at that point, it's a moot issue. He didn't have to go down his right to appeal and discretionary relief because he didn't want to contest the proceeding. So we would say and argue that those due process rights were met. And I think there's a second issue with regard to due process, and it's not coming to mind, but I know at least it's the reasonable opportunity to be heard and, here, he had that opportunity. He was before an immigration judge. The judge asked if he wanted to contest the proceedings to get an attorney, and he said no. So that, fundamentally, was met.

J.A. 97.

The district court granted Mr. Fernandez Sanchez's motion to dismiss on December 20, 2019. In his memorandum opinion, the district judge ruled that Mr. Fernandez Sanchez had satisfied the first two prongs of the 1326(d) analysis, exhaustion of administrative remedies and deprivation of judicial review, because he was never properly advised of his right to appeal. J.A. 108. The district court also determined that Mr. Fernandez Sanchez should have been considered for voluntary departure under the pre-conclusion voluntary departure standards, J.A. 112-13, and, after evaluating the district court decisions in *United States v. Ordoñez*, 328 F. Supp. 3d 479 (D. Md. 2018); *United States v. Itehua*, No. 3:17cr119, 2018 WL 1470250 (E.D. Va. Mar. 26, 2018); and *United States v. Sanchez-Lopez*, No. 2:19cr64, 2019 WL 5686914 (E.D. Va. Nov. 1, 2019), ruled:

Federal law may empower immigration officials with discretion in granting the right to voluntarily depart, but it also affirmatively mandates that the official at least make the alien aware of this right. This is for good reason. As the Supreme Court has noted, voluntary departure is "of great importance" to an alien, because "by departing voluntarily the alien facilitates the possibility of readmission." *Dada v. Mukasey*, 554 U.S. 1, 11 (2008). Furthermore, this case is distinguishable from *Sanchez-Lopez*, where the immigration judge was under no obligation to advise the defendant of the relief sought. 2019 WL 5686914, at *3. In the present case, the IJ had an affirmative obligation by the applicable regulations to apprise Fernandez Sanchez of this relief. 8 C.F.R. § 1240.11(a)(2). Thus, when the IJ failed to properly apprise Fernandez Sanchez of his apparent eligibility to pre-conclusion voluntary departure, he violated Fernandez Sanchez's due process rights.

J.A. 115.

Finally, the district court determined "there is ample evidence" to support Mr. Fernandez Sanchez's position that but for the violation of his due process rights, he would have established his eligibility for relief through pre-conclusion voluntary departure.

Here, and in contrast to *Villareal-Silva*, the Government does not appear to dispute that Fernandez Sanchez meets all of the enumerated requirements for pre-conclusion voluntary departure. He had not been convicted of any aggravated felony, made no additional requests for relief, and did nothing to suggest he would not have conceded removability or waived his right to appeal other issues. 8 C.F.R. § 1240.26(b)(1)(i). Furthermore, taking advantage of voluntary departure would have had clear pragmatic consequences for Fernandez Sanchez too. Fernandez Sanchez had two young children that he was providing for at the time, and he himself had come to the United States as a minor in 2006. Dkt. 37 at 15. Voluntary departure, rather than an order of removal, would have left open the possibility for a lawful return to the United States. *Dada v. Mukasey*, 554 U.S. 1, 11 (2008). A person subject to a removal, as Fernandez Sanchez was in 2011, must wait ten years before applying for lawful residence. 8 U.S.C. § 1182(A)(9)(A). While the Court cannot say with certainty what would have occurred, there is a reasonable probability that Fernandez

Sanchez would have been found eligible for pre-conclusion voluntary departure— having satisfied all its statutory requirements—and, taking into account the thin record developed by the IJ, that he would have in fact voluntarily departed.

J.A. 119. The district court therefore determined that the indictment must be dismissed. The government filed a timely appeal on January 17, 2020.

## SUMMARY OF THE ARGUMENT

In a proceeding that took little more than four minutes, the immigration judge repeatedly violated Mr. Fernandez Sanchez's due process rights, something the government did not dispute before the district court. The immigration judge did not advise him of the relief for which was apparently eligible, did not properly consider his eligibility for pre-conclusion voluntary departure, and did not advise him of his right to appeal. As a result, Mr. Fernandez Sanchez, an alien with a single DUI charge, no prior immigration history, and two U.S. citizen children, was deported rather than allowed to depart voluntarily. The district court correctly decided that this removal hearing was fundamentally unfair and therefore could not be the basis for a criminal charge of illegal reentry under 18 U.S.C § 1326.

The government now raises a new argument on appeal, contending for the first time that no due process violation occurred because Mr. Fernandez Sanchez had no due process right to be advised of or considered for discretionary relief. The Court should decline to consider an argument that the government did not raise below; but

even if the Court reaches the issue, the government's argument fails. Not only is Mr. Fernandez Sanchez entitled to the process provided for and authorized by Congress in the context of a removal hearing, but he has demonstrated a plain due process violation based on the denial of information about his right to appeal.

Further, he has amply demonstrated that he was prejudiced by the denials of due process, and the district court properly found that he had demonstrated a reasonable probability that he would have been granted and would have taken voluntary departure but for the immigration judge's errors.

## STANDARD OF REVIEW

In considering the district court's grant of a motion under § 1326(d) to dismiss an indictment, the Court reviews the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Lopez-Collazo*, 824 F.3d 453, 460 (4th Cir. 2016) (citing *United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir. 2005)).[3]

---

[3] While the government's brief states that the standard of review is *de novo*, that is actually the standard of review applied when the district court denies a motion to dismiss under section 1326(d). *See United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). Here, where the motion to dismiss was granted, *Lopez-Collazo* provides the proper standard of review.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY DETERMINED THAT MR. FERNANDEZ SANCHEZ'S DUE PROCESS RIGHTS WERE VIOLATED

The Supreme Court recognized in *United States v. Mendoza-Lopez*, 481 U.S. 828, 838-39 (1987), that a person charged with a violation of 8 U.S.C. § 1326 has a due process right to judicial review of the deportation "in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense" such as a violation of § 1326. After *Mendoza-Lopez*, Congress added subsection (d) to § 1326. Now, a defendant must show (1) exhaustion of administrative remedies (or excusal from the exhaustion requirement); (2) deprivation of the opportunity for judicial review (or excusal); and (3) that the entry of the order was fundamentally unfair. An order is "fundamentally unfair" where there was (a) a due process violation and (b) prejudice. Prejudice, in turn, requires a showing that there is a "reasonable probability" that but for the error at issue, the outcome of the proceedings would have been different. *El Shami*, 434 F.3d at 664-65.

### a. Immigration hearings are governed by a detailed statutory and regulatory framework

"The Immigration and Nationality Act sets forth the conditions under which a foreign national may be admitted to and remain in the United States and grants the Department of Homeland Security the discretion to initiate removal

proceedings." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 171 (D.D.C. 2015) (citing 8 U.S.C. §§ 1181–82, 1184, 1225, 1227–29, 1306, 1324–25). With respect to the removal of unauthorized non-citizens, the INA, which was enacted in 1952, has generally provided that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien," 8 U.S.C. § 1229a(a)(1), and in the context of such proceedings before an immigration judge, the INA makes clear that non-citizens are to be afforded certain rights, including the right to counsel, to examine and cross-examine witnesses, to present evidence, and to appeal. *See id.* § 1229a(b).

In addition, the implementing regulations regarding the conduct of removal hearings provide:

(a) Opening. In a removal proceeding, the immigration judge shall:

(1) Advise the respondent of his or her right to representation, at no expense to the government, by counsel of his or her own choice authorized to practice in the proceedings and require the respondent to state then and there whether he or she desires representation;

(2) Advise the respondent of the availability of pro bono legal services for the immigration court location at which the hearing will take place, and ascertain that the respondent has received a list of such pro bono legal service providers.

(3) Ascertain that the respondent has received a copy of appeal rights.

(4) Advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the government (but the respondent shall not be entitled to examine such national security information as the government may proffer in opposition to the respondent's admission to the United States or to an application by the respondent for discretionary relief);

(5) Place the respondent under oath;

(6) Read the factual allegations and the charges in the notice to appear to the respondent and explain them in non-technical language; and

(7) Enter the notice to appear as an exhibit in the Record of Proceeding.

8 C.F.R. § 1240.10. A separate regulation, titled "Ancillary matters, applications," provides, in pertinent part, "The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing, in accordance with the provisions of § 1240.8(d). 8 C.F.R. § 1240.11.

Among the benefits referred to in 8 C.F.R. § 1240.11 is voluntary departure. An alien who receives voluntary departure may be permitted to depart the United States at his own expense in lieu of being subject to removal proceedings. 8 U.S.C. § 1229c. The statute provides for two categories of voluntary departure: a general form, which only requires that an alien not be deportable based on an aggravated felony or a risk to national security, § 1229c(a)(1), and one applicable at the conclusion of immigration proceedings, if the judge finds the alien has been present in the country for the prior year, had good moral character for the past five years, is not deportable based on an aggravated felony or a risk to national security, and has established by clear and convincing evidence that the alien has the means to depart and intends to do so. 8 U.S.C. § 1229c(b). The implementing regulations refined the first general category, known as "pre-conclusion voluntary departure" to provide that it is available to an alien

who requests it "prior to or at the master calendar hearing," makes no additional requests for relief, concedes removability, waives appeal of all issues, has not been convicted of an aggravated felony, and is not deportable as a risk to national security. 8 C.F.R. § 1240.26. Importantly, "an alien need not show . . . that he has the financial means to depart the United States" in order to be granted pre-conclusion voluntary departure. *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999).

An alien may appeal a denial of voluntary departure to the Board of Immigration Appeals. *See* § 1240.26(g) (noting that appeal does not lie regarding the length of the voluntary departure period, as distinguished from issues of whether to grant voluntary departure).

### b. The government contends for the first time on appeal that Mr. Fernandez Sanchez did not have a due process right to be considered for discretionary relief, and therefore plain error review applies to this argument

The government did not raise the argument below that Mr. Fernandez Sanchez did not have a due process right to be considered for discretionary relief from removal. As a result, this Court must review this point for plain error – of which there was none. *United States v. Cohen,* 888 F.3d 667, 678 (4th Cir. 2018) ( "[A]ny contention of appellate error that was not pursued and preserved in the district court, however, is reviewed for plain error only").

To preserve an argument for appeal, the appellant must object on the same basis below as he contends is error on appeal; an objection on one basis does not preserve

an argument on others. *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014). Even if the proponent of an argument invokes the same rule in both instances, he may still waive his claim if he fashions his argument differently. *Id.* Similarly, a party does not go far enough by raising a nonspecific objection or claim; "[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (citing *Dallas Gas Partners, L.P. v. Prospect Energy Corp.,* 733 F.3d 148, 157 (5th Cir.2013); *see also United States v. Bennett,* 698 F.3d 194, 199 (4th Cir. 2012) (finding defendant waived argument where his argument below was "too general to alert the district court to the specific [objection]"). A party must object to the proposed action "with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for the objection." *Id.* (noting that the "need for some specificity is not a meaningless ritual; rather, a clear objection can enable a trial court to correct possible error in short order and without the need for an appeal.")

The government did not raise the argument that eligibility for discretionary relief is not protected by due process in the district court. The government's briefing did not challenge the existence of a due process violation at all, instead focusing on the first two prongs of the 1326(d) analysis, administrative exhaustion and judicial review, and the prejudice component of the third prong. *See* J.A. 44-47.

In oral argument, the government argued that Mr. Fernandez Sanchez was not deprived of his right to appeal at all, and that in any case, "there was nothing to contest" on appeal because he had admitted to removability. J.A. 93-94. Similarly, the government's argument regarding the IJ's failure to consider Mr. Fernandez Sanchez for voluntary departure focused on the many steps the government contended he would have to take in order to show actual prejudice. J.A. 95 ("He hasn't met that burden of actual prejudice of being in a different position because he can't show that he would have actually gotten all those steps correct, and then been able to actually voluntarily depart.")

In response to Judge Moon's question regarding what rights an alien actually has in an immigration hearing, counsel for the government stated only that he had a right to be heard, and that the immigration hearing had satisfied that right because Mr. Fernandez Sanchez had said he wanted to go back to Mexico. J.A. 97. "At that point, it's a moot issue. He didn't have to go down his right to appeal and discretionary relief because he didn't want to contest the proceeding. So we would say and argue that those due process rights were met." J.A. 97. This general statement was not sufficient to put the court on notice of the true basis of the government's objection, and does not preserve the argument the government now advances that aliens have no due process right to discretionary relief.

### c. The new argument that Mr. Fernandez Sanchez was not deprived of due process fails to satisfy plain error review

For this Court to find the district court erred in determining Mr. Fernandez Sanchez had a due process right to be considered for discretionary relief, the government must establish (1) this is an error; (2) the error is plain; and (3) the error affects substantial rights; *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020). If the government satisfies each of these factors, the Court has discretion to correct the error, but will do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Lockhart*, 947 F.3d at 191. None of these conditions is met in this case.

1. *There was no error, much less a plain error*

As the Supreme Court recognized in *Olano*, "plain" is synonymous with "clear" or "obvious." "At a minimum, [a] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano*, 507 U.S. at 734. *See also United States v. Ramirez Castillo*, 748 F.3d 205, 215 (4th Cir. 2014) ("An error is clear or obvious "if the settled law of the Supreme Court or this circuit establishes that an error has occurred.")

The government highlights a circuit split on whether a failure to advise a *pro se* alien respondent of available discretionary relief, and provide him an opportunity to apply for it, violates due process. Gov't Br. at 8-9. But the existence of a circuit split is not enough to create plain error where the Fourth Circuit has not spoken directly on a

legal issue. *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013) ("When we have yet to speak directly on a legal issue and other circuits are split, a district court does not commit plain error by following the reasoning of another circuit.") (citation omitted). And the Fourth Circuit has not spoken directly to this question.

In *Smith v. Ashcroft*, 295 F.3d 425 (4th Cir. 2002), this Court ruled that an immigration petitioner before the Court on a habeas petition had no property or liberty interest in the receipt of discretionary relief from removal, but this Court explicitly limited its holding to civil review and distinguished cases like this one where the defendant is criminally prosecuted. *Id.* at 430-31.[4] In criminal cases, in contrast to *Smith,* "since lawful deportation was a material element of the statutory offense, due process required . . . a pretrial review of whether the prior deportation was lawful." *Id.* at 431.

The government's reliance on *United States v. Wilson*, 316 F.3d 506 (4th Cir. 2003), is also unavailing because *Wilson* deals with a determination on the merits regarding relief, rather than with the right to apply for relief. In *Wilson*, the defendant applied for a waiver of deportation under section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994). The IJ considered the merits of Wilson's application, but determined that his unfavorable equities outweighed his favorable ones, and denied him. *Id.* at 508. He appealed, and the BIA determined that a change in the law retroactively barred him entirely from relief, and affirmed the IJ's denial. *Id.* After his deportation, the Supreme Court decided

---

[4] *Appiah v. INS*, 202 F.3d 704 (4th Cir. 2000), applies the same rationale as *Smith* and is therefore limited on the same basis.

*INS v. St. Cyr*, 533 U.S. 289 (2001), ruling that the bar on 212(c) relief was not retroactive. *Id.* Thus, after *St. Cyr*, he was effectively back at the place that he started; he was statutorily allowed to apply for relief, and did apply, but was denied on the merits.

Mr. Fernandez Sanchez is in a different situation. In his case, the IJ improperly determined he was ineligible for voluntary departure, essentially denying him at the application stage, because he improperly imposed the "means to depart" requirement applicable only to post-conclusion voluntary departure. While the defendant in *Wilson* was properly considered for relief but ultimately denied, Mr. Fernandez Sanchez was not properly considered. As the district courts in *United States v. Itehua*, No. 17-CR-119, 2018 WL 1470250 (E.D. Va. Mar. 16, 2018), and *United States v. Ordoñez*, 328 F. Supp. 3d 479 (D. Md. 2018), recognized, "a right to seek relief differs from a right to the relief itself." *Id.* at 494. Because *Smith v. Ashcroft*, by its own terms, did not apply in a case such as this, and because *Wilson* concerned the ultimate entitlement to section 212(c) relief, which was discretionary, rather than the right to be informed of and permitted to apply for the relief, which is mandatory, neither *Smith* nor *Wilson* speak to the outcome in this case.

Indeed, the *only* alleged defect in the hearings of the aliens in *Mendoza-Lopez* itself was the failure to adequately explain suspension of deportation – a discretionary form of relief. *United States v. Mendoza-Lopez*, 481 U.S. 828, 831 & n.3 (1987). The Supreme Court held that this failure to explain potential relief prevented the aliens from making

a considered and intelligent decision on whether to appeal. *Id.* at 840. Thus, settled law certainly does not run counter to the district court's decision, and tends to support it.

Similarly, this Court ruled in 2016, after *Wilson* had been decided, that failure to provide an alien with notice of his immigration hearing deprived him of the opportunity to seek section 212(c) relief, and thus that the alien had satisfied the due process prong of the fundamental fairness inquiry. *United States v. El Shami*, 434 F.3d 659, 664-65 (4th Cir. 2005). For these reasons alone, the government's due process argument fails under a plain error standard.

### 2. *There was no error affecting substantial rights nor did the error affect the fairness, integrity, or public reputation of judicial proceedings*

Under *Olano*, the government can demonstrate an effect on substantial rights "if the plain error prejudiced the outcome of the proceedings." *United States v. Perkins*, 108 F.3d 512, 517 (4th Cir. 1997). The government can show no such thing in this case, where Mr. Fernandez Sanchez's removal hearing suffered from additional due process violations. The IJ failed to advise him of the charges against him and explain them in nontechnical language,[5] failed to explain that he could present evidence or testimony,

---

[5] The government contends that Mr. Fernandez Sanchez was advised of the charges against him, Gov't Br. at 18, but this does not appear to be true, at least not in Spanish, which was the only language he spoke J.A. 1-7 (noting use of interpreter at all court hearings). As the recording of the hearing makes plain, this did not happen at is immigration hearing. J.A. 128. And while he was given a Notice to Appear that contained the charges against him, J.A. 27-28, there is no indication that it was provided to him in Spanish or that it was ever translated for him. The only mention of translation on the Notice to Appear is the following statement: "The alien was provided oral notice in the ___Spanish/English___ language of the time and place of his or her hearing and

and failed to advise him of his appeal rights. *See* 8 C.F.R. § 1240.10; J.A. 70. Courts have recognized that these errors violate due process as well. *See, e.g., Lopez-Collazo*, 824 F.3d at 462 (DHS's failure to provide alien with notice of the charges against him or to follow its own regulations violated due process); *United States v. Charleswell*, 456 F.3d 347, 360-61 (3d Cir. 2006) (failure to inform alien of his right to seek appeal renders proceeding fundamentally unfair where the failure prejudiced the alien). Thus, even if the district court's decision was incorrect, Mr. Fernandez Sanchez was still denied due process several times over.

Finally, even if the district court erred in its due process ruling, that error does not affect the fairness, integrity, or public reputation of judicial proceedings. Indeed, given the errors that occurred in Mr. Fernandez Sanchez's removal hearing, considerations of fairness, integrity, and public reputation weigh rather in support of the district court's decision.

### d. Even under a *de novo* standard of review, Mr. Fernandez Sanchez was denied due process in his removal proceedings

Even if this Court determines that plain error review does not apply, the government's argument fails at its most basic level because the district court was correct in its determination that Mr. Fernandez Sanchez's due process rights were violated.

---

of the consequences of failure to appear as provided in section 240(b)(7) of the Act." J.A. 28

The government argues that there was no constitutional due process violation when the immigration judge failed to advise Mr. Fernandez Sanchez of potential relief or to properly consider him for relief. The government's position is incorrect because the government's understanding of the process an alien is due in immigration hearings is unduly constricted, as courts have recognized.

*1. The IJ failed to comply with regulations and binding precedent*

For removal proceedings, Congress has specified certain mandatory procedures explicitly, and has also given rulemaking authority to administrative agencies to establish fair procedures for removal proceedings. See 8 U.S.C. § 1229a (mandating certain procedures); *id.* at (b)(4) (establishing rights, requiring "regulations of the Attorney General" to implement). Due process requires that these procedures be followed. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *see also generally United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (invalidating removal order where Attorney General failed to follow own regulations on delegation of authority); *United States v. Heffner*, 420 F.2d 809, 811-12 (4th Cir. 1969) (discussing *Accardi*, noting that the "failure of the Board and of the Department of Justice to follow their own established procedures was held a violation of due process."). This Court has also found due process violations from the failure of immigration officers to follow their own regulations:

> The government concedes that the expedited removal proceedings in this case did not comport with due process on the alternative basis that in failing to provide Lopez-Collazo with a Spanish translation of the NOI, *the DHS failed to comply with its own procedures* [...] The government allows that DHS's *failure to adhere to its own regulations was a violation of due process* that enabled Lopez-Collazo to establish the first prong of § 1326(d)'s fundamental unfairness requirement.
>
> For the reasons stated by the district court, we agree that DHS's failure to afford Lopez-Collazo a Spanish translation of the charges in the NOI and his rights rendered Lopez-Collazo's removal proceedings defective and abridged his due process rights.

*United States v. Lopez-Collazo*, 824 F.3d 453, 461-62 (4th Cir. 2016) (emphasis added); *see also United States v. Miranda-Rivera*, 206 F. Supp. 3d 1066, 1070 (D. Md. 2016) (failure to inform alien of eligibility for discretionary relief "deprived Mr. Miranda-Rivera of his right to due process under the law.").

The government now argues that only violations of an alien's right to notice, a hearing, and an opportunity to be heard support a collateral attack under section 1326(d), and that denials of statutory and regulatory due process rights are insufficient. Gov't Br. at 12. This is contrary to this Court's ruling on due process in *Lopez-Collazo*, 824 F.3d at 461-62 (recognizing that DHS's failure to follow its own regulations amounted to a due process violation). This Court recognized that while not all errors of law will rise to the level of a due process violation, there may be circumstances under which a court could "conclude that a misapplication of the law . . . led to a due process violation" and that "under such circumstances it might be possible for the court to

conclude that 'but for' the misapprehension of the law, defendant would not have been removed." *Lopez Collazo*, 824 F.3d at 467. This case is just such a situation.

The immigration judge in this case was required by both regulation and binding precedent to inform Mr. Fernandez Sanchez of the relief for which he was apparently eligible. This is clear from the BIA's en banc decision in *In re Cordova,* 22 I. & N. Dec. 966 (BIA 1999) (en banc), which held that an immigration judge is required to inform aliens of potential forms of relief for which they are apparently eligible, including voluntary departure. *Id.* at 971. The BIA recognized that this duty is required to comply with due process: "In order to accord *full due process* to all aliens who may be eligible for voluntary departure under section 240B(a) of the Act, the Immigration Judge must notify all aliens who are apparently eligible of the availability of voluntary departure under section 240B(a) of the Act." *Id.* (emphasis added). The BIA also noted that the "apparent eligibility" standard is satisfied if there is no evidence in the record that an alien has been convicted of an aggravated felony or been charged with deportability under section 237(a)(4) of the Act. *Id.*

This BIA opinion is entitled to *Chevron* deference as to its interpretation of the INA; as this Court is aware, an agency's interpretation of the statute it administers is entitled to deference if the agency exercises delegated authority to make rules carrying the force of law. *Ramirez v. Sessions*, 887 F.3d 693,701 (4th Cir. 2018) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *Chevron, U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984)). Here, the agency issued a published decision considering the

application of voluntary departure under the Immigration and Nationality Act. It was thus interpreting the statute that it administers and making a precedential decision. Its construction was also a permissible one under the statute, and it is entitled to deference

In *Cordova*, the BIA also relied on 8 C.F.R. § 1240.11(a)(2), which provides that the IJ must inform an alien of any relief for which he is apparently eligible and afford him the opportunity to apply for that relief. The government argues that this regulation applies only to aliens applying for permanent residence, but that is incorrect. In *Cordova*, the BIA relied on that regulation, and Cordova himself was not an applicant for permanent residence; rather, he conceded removability and sought to apply for cancellation of removal and voluntary departure. 22 I. & N. Dec. at 967.

Further, to the degree the regulation is ambiguous, the agency's interpretation of it is entitled to substantial deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997). *See Romero v. Barr*, 937 F.3d 282, 290-91 (4th Cir. 2019). The *Cordova* decision does not limit the regulation only to aliens seeking permanent residence, as the government argues, but applies it broadly to all aliens who may be eligible for relief.

Thus, by both regulation and binding precedent, the IJ was required to inform Mr. Fernandez Sanchez of the relief for which he was apparently eligible and give him the opportunity to apply.[6] For this reason, the government's arguments regarding

---

[6] Indeed, the Notice to Appear in Mr. Fernandez Sanchez's case explicitly states, "You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to

voluntary departure as "a matter of grace" rather than "a matter of right" miss the mark. J.A. 14, quoting *Jay v. Boyd*, 351 U.S. 345, 354 (1956). The ultimate decision whether to grant an alien voluntary departure may be discretionary, but duty to advise an alien regarding the possibility of that relief and permit him to apply is very much a requirement. As the Supreme Court recognized in *INS v. St. Cyr*, 533 U.S. 289, 307-08 (2001), "Traditionally, courts recognized a distinction between eligibility for discretionary relief, on one hand, and the favorable exercise of discretion, on the other." *Id.* Thus, although the ultimate decision on suspension of deportation (a form of discretionary relief) may be "a matter of grace," the Supreme Court has "held that a deportable alien had a right to challenge the Executive's failure to exercise the discretion authorized by the law." *Id.* at 308.

There is good reason for requirement for IJs to inform aliens of potential relief and afford them the opportunity to apply. Numerous courts have recognized the *pro se* aliens, unversed in the legal system of this country, and confronting a web of immigration law that can confound even experts in the field, require these protections in order to be able to present their case. As the Eighth Circuit noted, because pro se

---

the immigration judge." J.A. 28. As noted by Mr. Fernandez Sanchez below, there is no indication that Mr. Fernandez Sanchez was provided this notice in Spanish, as the NTA itself provides that he was provided only with oral notice in "Spanish/English" of the time and place of his hearing and the consequences of failure to depart. *Id.* Nonetheless, the fact that the agency explicitly stated that an alien would be given notice of potential relief and the opportunity to apply for it demonstrates that the IJ was in fact required to provide that notice and opportunity.

aliens "lack the legal knowledge to navigate their way successfully through the morass of immigration law," and because failing to do so could result in dire consequences, including their expulsion from the country, IJs are required to play an active role and help *pro se* parties develop the record. *Al Khouri v. Ashcroft*, 362 F.3d 461, 465 (8th Cir. 2004). *See also United States v. Copeland*, 376 F.3d 61, 71 (2d Cir. 2004). In light of this requirement and the fact that "many aliens are uncounseled, our removal system relies on IJs to explain the law *accurately* to pro se aliens. Otherwise, such aliens would have no way of knowing what information was relevant to their cases and would be practically foreclosed from making a case against removal." *Id.*

In *Mendoza-Lopez*, the Supreme Court recognized that a removal order could not serve as the basis of a criminal prosecution when the removal was based on "procedural errors . . . so fundamental they may functionally deprive the alien of judicial review." 481 U.S. at 839 n.17. Here, the IJ's errors in failing to follow any of the regulatory requirements for a hearing, and in particular of failing to advise Mr. Fernandez Sanchez of potential relief or of his right to appeal, fall squarely into that category.

*2. This Court should follow the reasoning of the Second and Ninth Circuits*

The government highlights a circuit split on whether a failure to advise a *pro se* alien respondent of available discretionary relief, and provide him an opportunity to apply for it, violates due process. Gov't Br. at 8-9. In *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004), the Second Circuit surveyed and correctly rejected many of the cases relied on by the government, holding that "failure to advise a potential deportee of a

right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)." The fact relief under Section 212(c) "is not constitutionally mandated and is discretionary" did not mean that "where an alien is erroneously denied information regarding the right to seek relief" and the result was "a deportation that likely would have been avoided" this error was "not fundamentally unfair" under 1326(d). *Id.* at 71.

> A ruling by an IJ that misleads an alien into believing that no relief exists falls into a different category because of the special duties of an IJ to aliens. The IJ ... unlike an Article III judge, is not merely the fact finder and adjudicator but also has an obligation to establish the record.
> …
> Given that IJs have a duty to develop the administrative record, and that many aliens are uncounseled, our removal system relies on IJs to explain the law accurately to pro se aliens. Otherwise, such aliens would have no way of knowing what information was relevant to their cases and would be practically foreclosed from making a case against removal.

*Id.*

The Second Circuit noted that the Supreme Court had made a distinction ignored by its sister circuits, between the right to *apply for* relief and the right to be *granted* relief. The latter is discretionary, but the former provides a "right to a ruling on an applicant's eligibility" and therefore provides a due process anchor. *Id.* at 72 (quoting *INS v. St. Cyr*, 533 U.S. 289, 307-08 (2001)). Here, Mr. Fernandez Sanchez does not argue he was entitled to voluntary departure as a matter of right; but he was entitled, as a *pro se* alien, to be informed of voluntary departure and its consequences, and allowed an opportunity to apply.

Similarly, in *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004), the court recognized that the requirement that an IJ advise an alien of possible relief from removal was mandatory; thus, failing to inform the alien of that relief, as required, was a denial of due process. *Id.* at 1049.

The government argues that *Copeland* is inapposite because the *Copeland* court considered whether there was a "fundamental procedural error" rather than a "due process violation." Gov't Br. At 17. But in the context of a collateral attack under section 1326(d), the procedural protections required by statute and regulation are due process for an alien. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.")

As this Court stated, "[W]here a *procedural defect* in an immigration proceeding insulates the resulting order from judicial review, due process requires that the order be subject to collateral attack if it is relied on in a subsequent criminal prosecution." *United States v. Moreno-Tapia*, 848 F.3d 162, 169 (4th Cir. 2017) (emphasis added). The Third Circuit recognized that a proceeding may be fundamentally unfair not only "where it deprives an alien of some substantive liberty or property right such that due process is violated," but also "where an agency has violated procedural protections such that the proceeding is rendered fundamentally unfair." *United States v. Charleswell*, 456 F.3d 347, 359-60 (3d Cir. 2006).

The term "fundamental procedural error" used by *Copeland* comes from *Mendoza-Lopez*: "The *fundamental procedural defects* of the deportation hearing in this case" rendered direct review unavailable. 481 U.S. at 841 (emphasis added); "We decline at this stage to enumerate which *procedural errors* are so *fundamental* that they may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." *Id.* at 839 n.17 (emphasis added). *Copeland*, then, does not apply a different standard, but simply hews closer to the Supreme Court's terminology.

Many of the cases relied on by the government for the principle that there is no due process right to be advised of or considered for discretionary relief rely in turn on prior immigration decisions. *See United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002) (relying on *Alfareche v. Cravener*, 203 F.3d 381 (5th Cir. 2000)); *United States v. Estrada*, 876 F.3d 885 (6th Cir. 2017) (relying on *Ashki v. INS*, 233 F.3d 913); *United States v. Aguirre-Tello*, 353 F.3d 1199 (10th Cir. 2004) (replying on *Smith v. Ashcroft*, 295 F.3d 425). All of these cases relied on some version of the argument that an alien has no constitutionally protected liberty or property interest in obtaining discretionary relief from deportation. But as Judge Motz noted in her concurrence in *United States v. Wilson*, a defendant facing a criminal charge for illegal reentry is in a different situation. "[A]s the Court recognized in *Mendoza–Lopez*, a defendant facing criminal prosecution under § 1326 does have a liberty interest at stake—the liberty interest in not being

imprisoned on the basis of a fundamentally unfair deportation proceeding that has never been subjected to judicial review." 316 F.3d at 515.

Finally, the cases cited by the government generally do not appear to have considered the fact, discussed above, that IJs are required by regulation and statute to advise aliens of the relief for which they are apparently eligible. This obligation, coupled with the settled principle of *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," results in a due process violation when, as here, an IJ ignores it.

### 3. Mr. Fernandez Sanchez's due process rights were also violated by the denial of his appeal rights, which forms a wholly separate and independent basis to support the district court's holding

The IJ's failure to properly consider Mr. Fernandez Sanchez for voluntary departure was not the only due process error that occurred in the immigration hearing. As noted above, among the IJ's numerous errors was the determination that Mr. Fernandez Sanchez waived his right to appeal, when in fact appeal was not discussed at all, much less knowingly and intelligently waived. This denial violates due process as well as satisfying the exhaustion of remedies and denial of judicial review prongs of section 1326(d).

This Court recognized, in *Narine v. Holder*, 559 F.3d 246 (4th Cir. 2009) that where the alien was not advised regarding his appeal rights or that he would waive his

right to appeal his removal by accepting voluntary departure, his waiver was not knowing and intelligent, and thus invalid.

Obtaining an invalid waiver of the right to appeal a deportation order violates due process." *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014). In *Gomez*, the defendant signed a Stipulated Removal form agreeing to waive his right to appeal the deportation order, but the evidence indicated that the defendant had difficulty reading Spanish and the form was never explained to him. *Id.* at 896. The Ninth Circuit ruled that the removal proceeding "violated Gomez's right to due process by obtaining an invalid waiver of Gomez's right to appeal the deportation order." *Id. See also United States v. Charleswell*, 456 F.3d 347, 360-61 (3d Cir. 2006) ("deprivation of a statutory right to appeal is a fundamental defect" under section 1326(d)(3)); *United States v. Palladares-Galan*, 359 F.3d 1088, 1098 (9th Cir. 2004) (determining the alien had not validly waived his appeal rights where his statements to the immigration judge "conveye[ed] significant confusion about what the appeals process would have entailed and what the competing consequences of appeal and waiver might have meant for him and his family in practical terms."); *United States v. Lopez-Vasquez*, 1 F.3d 751, 753-54 (9th Cir. 1993) ("Although a deportee may waive his right to judicial review of his deportation order, that waiver must be considered and intelligent. Otherwise, the deportee is deprived of judicial review in violation of due process.") (citations omitted).

In this case, the recording of Mr. Fernandez Sanchez's immigration hearing makes it plain that he was never advised of his appeal rights, as required by 8 U.S.C. §

1229a(c)(5) and 8 C.F.R. § 1240.10(a). Having never been told of those rights, he did not make a considered and intelligent waiver of them. Thus, his removal proceeding denied him due process.

Implicit in the recognition that Mr. Fernandez Sanchez never validly waived his appeal rights is the corollary determination that the immigration judge failed to develop the record supporting his decision. While the IJ circled "Waived" on the written memorialization of his decision, J.A. 30, and thus apparently believed that Mr. Fernandez Sanchez had made a considered and intelligent waiver, there is no evidence in the record to support that decision. This failure to develop the record constitutes a further denial of due process. As the Second Circuit recognized, "Given that [immigration judge]s have a duty to develop the administrative record, and that many aliens are uncounseled, our removal system relies on [immigration judge]s to explain the law accurately to *pro se* aliens. Otherwise, such aliens would have no way of knowing what information was relevant to their cases and would be practically foreclosed from making a case against removal. *United States v. Copeland*, 376 F.3d 61, 71 (2d Cir. 2004). Thus, in cases where the IJ has not fully explained the relief available to an alien, courts have ruled that there has been no valid waiver of appeal rights. *See, e.g., United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (noting that an alien cannot have had a meaningful opportunity to appeal if they were not made aware of their right to seek any relief). Here, because Mr. Fernandez Sanchez was denied the opportunity to appeal, and the IJ failed to develop the record, a separate due process violation exists.

## II. THE DISTRICT COURT PROPERLY DETERMINED THAT MR. FERNANDEZ SANCHEZ SUFFERED PREJUDICE

The district court properly determined that Mr. Fernandez Sanchez was not only eligible for pre-conclusion voluntary departure, but would have been granted it and departed, and thus has sufficiently shown prejudice.

The government does not dispute that the analysis for pre-conclusion voluntary departure applies. Gov't Br. 23. The government argues, however, that Mr. Fernandez Sanchez has not shown prejudice because he did not request voluntary departure at the removal hearing and it is not clear he would have requested it; the district court's determination that he would have accepted voluntary departure was incorrect; and even if he was granted voluntary departure, he must show that he would not be deported in the future. This Court should reject each of those arguments.

This Court reviews the factual determinations of the district court for clear error. *Lopez-Collazo*, 824 F.3d at 460. *See also United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015) ("we review the district court's factual findings, and its judgment regarding factual disputes, for clear error.) To find clear error, a reviewing court must find the district court's factual determinations are against the clear weight of the evidence as a whole. *Id.*

### a. The district judge properly found evidence that Mr. Fernandez Sanchez would have likely received and accepted voluntary departure and that therefore he was prejudiced

.

An alien is eligible for pre-conclusion voluntary departure where he requests relief at or before the master calendar hearing; makes no additional requests for relief; concedes removability; waives appeal of all issues; and has not been convicted of an aggravated felony and is not deportable on national security grounds. 8 C.F.R. § 1240.26(b).

The district court found that there was "ample evidence" to support Mr. Fernandez Sanchez's contention that he was eligible for pre-conclusion voluntary departure. J.A. 116. Mr. Fernandez Sanchez had a minimal criminal record, consisting of a single DUI conviction, J.A. 40, and no immigration history; he had lived in this country since he was a minor, and in 2011, when he was brought before the immigration judge, he has two U.S. citizen children he provided for. J.A. 116. The district court considered these facts, along with the strong interest Mr. Fernandez Sanchez had in being able to reunite with his family, appropriately weighed the evidence, and found, "There is a reasonable probability that Fernandez Sanchez would have been found eligible for pre-conclusion voluntary departure—having satisfied all its statutory requirements requirements—and, taking into account the thin record developed by the IJ, that he would have in fact voluntarily departed." J.A. 119.

The district court's decision is well supported in the law; aliens with far fewer ties to the United States and a far lengthier and more serious criminal history have been granted voluntary departure. For example, in *Matter of Gonzalez-Figueroa*, 2006 WL 729784 (BIA 2006), the alien had four assault convictions, a conviction for resisting

arrest, but also had a sister and two nieces who were U.S. citizens and a mother who was a legal permanent resident. Mr. Gonzalez-Figueroa had been in the United States for less than four years and yet, the Board of Immigration Appeals held that the immigration judge properly exercised discretion to grant Mr. Gonzalez-Figueroa voluntary departure. *Id.* at *2.[7] Given the other cases where voluntary departure was approved, it is reasonably probable that Mr. Fernandez Sanchez would have received it too had he been properly considered.

The government disputes the district court's weighing of the evidence, arguing that the court improperly accorded little weight to the immigration hearing due to the IJ's failure to develop the record. Gov't Br. at 26. But the district court properly weighed the evidence, and this is precisely the sort of fact-specific inquiry that merits substantial deference to the district court. The court considered Mr. Fernandez Sanchez's circumstances, including his U.S. citizen children, and properly recognized that he had a strong interest in preserving an ability to return legally. The district court also considered the IJ's brief and perfunctory questioning of Mr. Fernandez Sanchez. Given

---

[7] *See also Matter of Sanabria-Dominguez*, 2010 WL 2601495 (BIA 2010) (grant of voluntary departure to alien with record of previous voluntary returns, failure to file tax returns, and driving without a license); *Matter of Mounaddif*, 2008 WL 486935 (BIA 2008) (grant of voluntary departure to alien with thirteen years' presence, "few family ties here," and "unstable employment history" as well as assault and battery conviction which he "did not fully disclose" and was entirely dependent on others for financial support); *Matter of Pineda-Castellanos*, 2005 WL 3833024 (BIA 2005) (grant of voluntary departure to alien with "at least 6 convictions for illegal entry, battery, drunkenness, threatening, a second battery, and driving under the influence," as well as marriage to U.S. citizen for which *bona fides* not established).

Mr. Fernandez Sanchez's strong interest in a successful voluntary departure, and that the only evidence against his accomplishing it—his statement at the hearing—was weak, the district judge properly applied his discretion to weigh the evidence and make a determination. Mr. Fernandez Sanchez is not required to show to a certainty that the outcome would have been different absent the due process violation; he need only show a "reasonable probability" of a different outcome. *Lopez-Collazo*, 824 F.3d at 462. This he has done.

### b. The government's argument that Mr. Fernandez Sanchez does not meet the standard for pre-conclusion voluntary departure because he did not request it is nonsensical

The government argues that Mr. Fernandez Sanchez does not meet the criteria for pre-conclusion voluntary departure because "he did not request voluntary departure, and it is not evident from the record that he would have." Gov't Br. at 24. The government's argument sets Mr. Fernandez Sanchez in a catch-22; according to the government's formulation, due process does not require the IJ to advise a *pro se* alien about any apparent eligibility for relief, but in order to show prejudice, the alien must nonetheless request the relief he has never been informed of. This cannot be right.

Mr. Fernandez Sanchez told the IJ that he did not want to be deported. J.A. 128. He also told the IJ that he wanted to return to Mexico rather than finding an attorney. *Id.* Returning to Mexico without being deported is essentially a description of voluntary departure. But given that the IJ never explained what it was, what was required for it,

or offered him a chance to apply for it, it is hardly surprising that he did not ask for it in so many words. It would be Kafkaesque to require a *pro se* alien to request a benefit he did not know he was entitled to when the IJ improperly failed to explain it to him.

### c. The government's argument that Mr. Fernandez Sanchez must show he would not be deported in the future is incorrect

The government contends that there is no evidence that Mr. Fernandez Sanchez would *actually have departed voluntarily* had voluntary departure been granted.[8] To begin with, Mr. Fernandez Sanchez would have nothing to gain by not actually departing, because he was in immigration detention and likely would have remained in immigration detention throughout his departure period. The issue of bond was not before the IJ. Thus, as a practical matter, there was no question of his absconding or not cooperating with an order to depart because he would have remained detained until his departure date.

Had he been granted voluntary departure, the IJ would not have entered a removal order on June 30, 2011 and he would not have been removed as ordered on

---

[8] The government also contends that counsel for Mr. Fernandez Sanchez never stated that he would have requested voluntary departure. Gov't Br. at 25. This argument misses the point. Counsel for Mr. Fernandez Sanchez argued that he would have been *granted* voluntary departure. J.A. 76. An argument that he would have been granted voluntary departure necessarily includes the component that, once properly advised, he would have requested it, since he must request it in order for it to be granted. *See* 8 C.F.R. 1240.26(b).

July 22, 2011. Had he been granted voluntary departure, the deportation at issue in this case would therefore not have taken place. As a practical matter, he thus has adequately shown prejudice by showing a reasonably probability that he would not have been deported. *El Shami*, 434 F.3d at 665.

The government attempts to argue that he must show he would not have been deported *ever*, Gov't Br. at 24-25 (referring to Mr. Fernandez Sanchez's subsequent reinstatements of deportation and the possibility that if he did not voluntarily depart within the departure period, his voluntary departure would be converted to an order of deportation on a later date), but that is not the question before the Court. To show prejudice, he need only show a reasonably probability that he would not have been deported as ordered by the IJ; he is not required to foreclose all possible future scenarios that could lead to deportation, and the Court should reject the government's invitation to speculate. .

### d. To the extent it was relevant whether Mr. Fernandez Sanchez could pay for his departure, he was also prejudiced by the IJ's failure to develop the record

The government argues that Mr. Fernandez Sanchez's ability to pay for voluntary departure remains a relevant consideration, even if it is not a requirement for pre-conclusion voluntary departure. The government cites no authority for this proposition, and it is counter to the BIA's decision in *In re Arguelles-Campos*, 22 I. & N. Dec. 811 (BIA 1999), which noted that IJs may consider factors such as

the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. We further stated that discretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs

*Id.* 817. All of these factors weigh in favor of a grant of pre-conclusion voluntary departure for Mr. Fernandez Sanchez.

But to the degree that the ability to pay is relevant, as the government contends, Mr. Fernandez Sanchez was certainly prejudiced by the IJ's failure to develop the record. The IJ's failure to inform Mr. Fernandez Sanchez of the nature and requirements of voluntary departure, or to probe futher into his ability to pay, deprived him of the opportunity for a fair hearing on the question of voluntary departure. *Al Khouri v. Ashcroft*, 362 F.3d 461 (8th Cir. 2001), addresses that very issue. As in *Al Khouri*, the "fundamental error" in Mr. Fernandez Sanchez's removal hearing "prevented him from developing the merits of his case." *Id.* at 466. To the degree that the Court considers Mr. Fernandez Sanchez's statements at his immigration hearing, then, this Court should recognize that "prejudice may be shown where the IJ's inadequate explanation of the hearing procedures and failure to elicit pertinent facts prevented the alien from presenting evidence relevant to their [sic] claim." *Al Khouri v. Ashcroft*, 362 F.3d 461, 466 (8th Cir. 2004)

Mr. Fernandez Sanchez has shown a reasonable probability that he would not have been removed but for the due process errors in his removal hearing; the district court's finding of prejudice is correct and should be affirmed.

CONCLUSION

For the foregoing reasons, Mr. Fernandez Sanchez requests that this court affirm the decision of the district court granting his motion to dismiss.

Respectfully submitted this 7th day of August, 2020.

JUVAL O. SCOTT
Federal Public Defender
for the Western District of Virginia

/s/ Erin Trodden
Asst. Federal Public Defender
VSB 71515
116 N. Main St., Room 305
Harrisonburg, VA 22802
Tel (434) 220-3396
erin_trodden@fd.org

Counsel for Defendant

## REQUEST FOR ORAL ARGUMENT

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

## CERTIFICATE OF COMPLIANCE

1. The brief of the appellant has been prepared using Microsoft Word 2010 software, Garamond font, 14 point proportional type size.

2. EXCLUSIVE of the table of contents, table of authorities, statement with respect to oral argument, any addendums, and the certificate of service, this brief is 10,171 words in length, and is compliant with Fed. R. App. Pr. 32(a)(7)(B).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


August 7, 2020                          /s/Erin Trodden
Date                                    Erin Trodden
                                        Assistant Federal Public Defender

CERTIFICATE OF SERVICE

This is to certify that the foregoing Brief of Appellant was electronically filed and thus served on the United States at the following electronic address:

Laura Day Rottenborn
Assistant United States Attorney
Laura.Rottenborn@usdoj.gov

on this 7th day of August, 2020

/s/Erin Trodden
Erin Trodden
Assistant Federal Public Defender